IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JAMIE WILLIAMS, ET AL. | Civil No. 23-00028 LEK-KJM |
| Plaintiffs, | FINDINGS AND RECOMMENDATION TO GRANT: |
| vs. | (1) JOINT PETITION FOR GOOD FAITH SETTLEMENT DETERMINATION; AND |
| THE UNITED STATES OF AMERICA, ET AL., | (2) PLAINTIFFS' MOTION FOR APPROVAL OF SETTLEMENT OF |
| Defendant. | MINORS' CLAIMS |

FINDINGS AND RECOMMENDATION TO GRANT:
(1) JOINT PETITION FOR GOOD FAITH
SETTLEMENT DETERMINATION; AND (2) PLAINTIFFS'
MOTION FOR APPROVAL OF SETTLEMENT OF MINORS' CLAIMS

On August 1, 2025, Plaintiffs and Defendant United States of America ("Defendant") filed a Joint Petition for Good Faith Settlement Determination ("Joint Petition").[1] ECF No. 87. On August 26, 2025, non-parties Ohana Military Communities, LLC ("Ohana") and Hunt MH Property Management, LLC ("Hunt") filed a Memorandum in Opposition to the Joint Petition. ECF No. 104. That same

---

[1] The Joint Petition states that 112 plaintiffs remain in this case, including the 87 settling plaintiffs that are the subject of the Joint Petition. ECF No. 87-1 at 6. For purposes of conciseness, the Court does not list the names of all of the plaintiffs but collectively refers to them as "Plaintiffs" in this Order. At the hearing on the Joint Petition, Defendant clarified that there are now 107 plaintiffs: 87 who are the subject of the Joint Petition; two who have tentatively settled but are not the subject of the Joint Petition; and 18 who have not settled.

day, non-parties CP IV Waterfront, LLC d/b/a Kapilina Beach Homes ("Kapilina") and GREP Southwest, LLC ("GREP"), filed a Statement of Position to the Joint Petition. ECF No. 105. On September 9, 2025, Defendant filed a Reply. ECF No. 132. On September 11, 2025, Plaintiffs filed a Reply. ECF No. 133.

On August 1, 2025, Plaintiffs filed a Motion for Approval of Settlement of Minors' Claims ("Motion"). ECF No. 86. On September 18, 2025, Defendant filed a Response to the Motion. ECF No 142. Plaintiffs did not file a reply. On December 3, 2025, pursuant to the Court's request, Plaintiffs filed a supplemental memorandum in support of the Motion. ECF No. 166.

On December 10, 2025, the Court held hearings on the Joint Petition and the Motion. ECF No. 169. Paul V.K. Smith, Esq., appeared on behalf of Plaintiffs. Eric A. Rey, Esq., and Lucas R. White, Esq., appeared on behalf of Defendant. Randall C. Whattoff, Esq., appeared telephonically on behalf of Ohana and Hunt. Calvert G. Chipchase, Esq., and Lisa K. Swartzfager, Esq., appeared on behalf of Kapilina and GREP.

After carefully considering the memoranda, applicable law, record in this case, and arguments of counsel, the Court FINDS AND RECOMMENDS that the district court GRANT the Joint Petition and the Motion for the reasons set forth below.

BACKGROUND

I.     The Instant Lawsuit—*Williams, et al. v. United States, et al.*

This matter is one of a number of cases filed in this district in which over 7,300 plaintiffs assert claims under the Federal Tort Claims Act ("FTCA") against the United States arising from the 2021 releases of jet fuel at the Red Hill Bulk Fuel Storage Facility ("Red Hill"). Plaintiffs filed their Complaint in January 2023. ECF No. 1. The operative pleading is the Second Amended Complaint. ECF No. 53. Therein, Plaintiffs allege that the November 2021 fuel release contaminated the drinking water system that supplied Plaintiffs' homes, causing them, among other things, physical injury, emotional distress, and loss of use and enjoyment of their properties. *Id.* at 18–22 ¶¶ 103–122. Plaintiffs assert FTCA claims for negligence, public/private nuisance, and negligent infliction of emotional distress. *Id.* at 19–22 ¶¶ 110–122.

To date, 107 Plaintiffs remain in this case. 87 Plaintiffs have reached a settlement of their claims against Defendant and seek a determination that the settlements were made in good faith. ECF No. 87 at 2; ECF No. 87-2 at 5–8 (list of names of the 87 settling Plaintiffs and the settlement amounts for each Plaintiff). The trial date for the remaining non-settling Plaintiffs is April 12, 2027. ECF No. 165 at 2 ¶ 1.

II.     *Feindt, et al. v. United States*, Civil No. 22-00397 LEK-KJM

In a related matter, *Feindt, et al. v. United States*, plaintiffs assert FTCA claims against the United States related to the November 2021 fuel release. The district court conducted a ten-day bench trial for 17 bellwether plaintiffs beginning on April 29, 2024. Civil No. 22-00397 LEK-KJM, District of Haw. ("*Feindt*"), ECF No. 633 at 1. The trial included, among other things, testimony from 20 retained experts, over 650 exhibits, and extensive pre- and post-trial briefing and other filings. ECF No. 87-1 at 7–8; ECF No. 87-2 at 3 ¶¶ 10–12.

On May 7, 2025, the district court issued its Preliminary Findings of Fact and Conclusions of Law ("Preliminary FOF/COL"). *Feindt*, ECF No. 621. On August 7, 2025, the district court issued its Findings of Fact and Conclusions of Law ("Final FOF/COL"), which consisted of 173 pages. *Feindt*, ECF No. 633. In the Final FOF/COL, the district court awarded general damages for each bellwether plaintiff in amounts ranging from $3,000 to $75,000 "for pain and suffering and, in the case of some Plaintiffs, emotional distress[.]" *Id.* at 171–72 ¶ 29. In general, the minor bellwether plaintiffs received less than the adult bellwether plaintiffs. *See id.* (awarding plaintiffs T.F. and D.J—both who were under two years of age as of the November 2021 spill—$3,000 to $5,000 and awarding adult plaintiffs Aubart, Dietz, Feindt, Jessup, and Witt $37,500 each). The court also awarded $1,000 in hedonic damages to each bellwether plaintiff and

special damages in varying amounts to five bellwether plaintiffs. *Id.* at 172–73 ¶¶ 30–34.

III.  Related Cases Against Plaintiffs' Landlords

In addition to the FTCA cases filed against the United States, residents who received water from the Joint Base Pearl Harbor Hickam ("JBPHH") water system filed lawsuits against their landlords and property managers for lost rent and consumer protection issues. ECF No. 87-1 at 8–9 (citing *Powell v. Ohana Military Cmtys., LLC,* Civil No. 24-00184 LEK-KJM (D. Haw.); *Island Palm Cmtys., LLC v. Amuro,* Civil No. 24-00458 LEK-RT (D. Haw.), *on appeal* Case No. 25-2153 (9th Cir.); *Lethgo v. CP IV Waterfront LLC d/b/a Kapilina Beach Homes,* Case No. 1CCV-22-000005 (Cir. Ct. of the First Circuit, State of Haw.)). In addition, similar cases filed against landlords seek damages for personal injuries arising from the November 2021 fuel release. *Id.* at 9 (citing *Camp v. Ohana Military Cmtys., LLC,* Civil No. 24-00003 LEK-KJM (D. Haw.); *Bentley v. Hickam Cmtys.,* Civil No. 24-00007 LEK-KJM (D. Haw.)). *Camp* and *Powell* are putative class actions that, if certified, could include the settling Plaintiffs. *Id.*

The landlords include Ohana and Kapilina, which lease land from the United States to operate military housing communities. ECF No. 104 at 8; ECF No. 105 at 4. Hunt serves as the property manager for the communities leased by Ohana. ECF No. 104 at 8. GREP is the property manager for the community leased by

Kapilina. ECF No. 105 at 4. Pursuant to their lease and utility agreements with the United States, Ohana and Kapilina purchase water from the United States, which is transported from the JBPHH water system to residents. *See* ECF No. 104 at 9; ECF No. 105 at 4. The defendants in *Camp* and *Powell* have served the United States with third-party complaints, asserting that the United States is liable for the tenants' claims. *Camp*, ECF No. 43; *Powell*, ECF No. 31.

IV.   Settlements in the Instant Lawsuit

On May 30, 2025, pursuant to the parties' request, the Court held a settlement conference. ECF Nos. 80, 82. Although the parties did not reach a settlement at the conference, settlement discussions remained ongoing. ECF No. 82. On July 2, 2025, the parties filed a Joint Notice of Settlement and Stipulation for Briefing Regarding Good Faith Determination of Settlement. ECF No. 84. Therein, the parties stated that 83 Plaintiffs reached agreements in principle to settle their claims against Defendant. *Id.* at 2.

The Joint Petition states that 87 Plaintiffs have reached a settlement of their claims against Defendant. ECF No. 87 at 2. The settling Plaintiffs can be divided into two groups. Group one, consisting of 49 Plaintiffs, agreed to settle before the district court issued its Preliminary FOF/COL in *Feindt*. ECF No. 87-2 at 3 ¶ 13, 5–6. Group two, consisting of 38 Plaintiffs, agreed to settle after the *Feindt* Preliminary FOF/COL based on the damages awarded in the bellwether trial. *Id.* at

6

3–4 ¶ 14, 7–8.  The parties state that the only difference in the settlement terms between the two groups is the settlement amounts.  ECF No. 87-1 at 9–10.  The parties submitted an exemplar settlement agreement that all settling Plaintiffs will execute.  ECF No. 87-2 at 9–15.

Plaintiffs settled their claims against Defendant in exchange for a full release of claims, as follows:

> 3.     Settling Plaintiff hereby agrees to accept the Settlement Amount in full settlement, satisfaction, and release of any and all Claims which Settling Plaintiff or his/her predecessors, successors, and assigns now has or may hereafter acquire against the United States of America, its agents, servants, or employees by reason of the above-captioned case or the facts asserted therein.  This Settlement Agreement does not release any Claims which Settling Plaintiff or his/her predecessors, successors, and assigns now has or may hereafter acquire against any other persons, including any Claims Settling Plaintiff currently may have against his/her landlord or property manager.

*Id.* at 11 ¶ 3.

On August 1, 2025, the parties filed the Joint Petition, and Plaintiffs filed the Motion.  ECF Nos. 86, 87.  The Court previously set hearings on the Joint Petition and the Motion for October 15, 2025.  ECF No. 110.  On October 8, 2025, however, Defendant filed a Motion to Stay Case During Lapse of Appropriations ("Motion to Stay") due to the government shutdown and lapse in appropriations to fund defense counsel that began on October 1, 2025.  ECF No. 145.  On October 9, 2025, the district court granted the Motion to Stay and vacated the hearings on the

Joint Petition and Motion.  ECF No. 147.  On November 13, 2025, Defendant filed a Notice of Restoration of Appropriations, which informed the court of the restoration of funding.  ECF No. 160.  On November 17, 2025, the district court issued an entering order lifting the stay.  ECF No. 161.  On November 18, 2025, the Court reset the hearings on the Joint Petition and Motion for December 10, 2025.  ECF No. 162.

## DISCUSSION

I.  Joint Petition

In the Joint Petition, the parties seek a determination that the settlements between the settling Plaintiffs and Defendant were made in good faith pursuant to Hawaii Revised Statutes ("HRS") § 663–15.5.  "Under Hawaiʻi law, a party must petition the court for a hearing on the issue of whether a settlement was made in good faith and must serve notice to all known joint tortfeasors or co-obligors." *Wyndham Vacation Resorts, Inc. v. Architects Haw. Ltd.*, Civil No. 08-00236 DAE-LEK, 2010 WL 2347060, at *3 (D. Haw. May 21, 2010) (citing HRS § 663–15.5(b)), *adopted by* 2010 WL 2346616 (D. Haw. June 7, 2010).  "The petition shall indicate the settling parties and, except for a settlement that includes a confidentiality agreement regarding the case or the terms of the settlement, the basis, terms, and settlement amount." *Id.* (citing HRS § 663–15.5(b)).  "Any non-settling party [or alleged joint tortfeasor or co-obligor] may file an objection and

such party bears the burden of proving a lack of good faith. *Id.* (citing HRS § 663–15.5(b)).

> A finding of good faith settlement:
>
> (1) discharges the settling party from liability for contribution to other joint tortfeasors, (2) reduces a plaintiff's claims against joint tortfeasors by the amount stipulated to in the release or in the amount of the consideration paid for it, whichever is greater, (3) bars other joint tortfeasors from further claims against the settling joint tortfeasor, except where there is a written indemnity agreement, and (4) results in dismissal of all crossclaims against the settling joint tortfeasor, except where there is a written indemnity agreement.

*PacMar Techs. LLC v. Kao*, CIV NO. 22-00283 LEK-WRP, 2025 WL 3454786, at *3 (D. Haw. Dec. 1, 2025) (other citation omitted) (citing HRS § 663–15.5(a), (d)).

"The Hawaii Supreme Court has adopted a 'totality of circumstances' analysis to determine whether a settlement is made in good faith under HRS § 663–15.5." *Id.* (other citation omitted) (citing *Troyer v. Adams*, 102 Haw. 399, 77 P.3d 83 (2003)). "The Hawaii Supreme Court set forth a nonexclusive list of issues that courts may consider when deciding whether a settlement was made in good faith" (the "*Troyer* factors"):

> (1) the type of case and difficulty of proof at trial, e.g., rearend motor vehicle collision, medical malpractice, product liability, etc.;
>
> (2) the realistic approximation of total damages that the plaintiff seeks;
>
> (3) the strength of the plaintiff's claim and the realistic likelihood of his or her success at trial;

9

(4) the predicted expense of litigation;

(5) the relative degree of fault of the settling tortfeasors;

(6) the amount of consideration paid to settle the claims;

(7) the insurance policy limits and solvency of the joint tortfeasors;

(8) the relationship among the parties and whether it is conducive to collusion or wrongful conduct; and

(9) any other evidence that the settlement is aimed at injuring the interests of a non-settling tortfeasor or motivated by other wrongful purpose.

*Id.* (other citation omitted) (citing *Troyer*, 102 Haw. at 427, 77 P.3d at 112).

A settlement "is made in good faith when the totality of circumstances show that the settlement was not collusive or aimed at injuring the interests of the non-settling parties." *Id*. (other citation omitted) (citing *Troyer*, 102 Haw. at 427, 77 P.3d at 112). In addition, a settlement is made in good faith absent "any evidence of collusion, fraud, dishonesty or other wrongful conduct." *Wyndham*, 2010 WL 2347060, at *4 (citing *Troyer*, 102 Haw. at 430, 77 P.3d at 110).

Here, the non-settling entities, Ohana, Hunt, Kapilina, and GREP (collectively, the "Non-Settling Entities"), have not satisfied their burden of proving that the settlements lack good faith. First, the Non-Settling Entities have not introduced "any evidence of collusion, fraud, dishonesty or other wrongful conduct." *Id.* "The absence of this evidence requires the Court to conclude that

10

the settlement was in good faith." *Id.* (citing *Troyer*, 102 Haw. at 430, 77 P.3d at 110).

Second, the Non-Settling Entities have not demonstrated that the settlements are collusive, aimed at injuring the interests of the Non-Settling Entities, or motivated by any other wrongful purpose. *Troyer*, 102 Haw. at 427, 77 P.3d 83 at 111. As previously noted, the release in the settlement agreement expressly excludes claims that the settling Plaintiffs "currently may have against his/her landlord or property manager," such as the Non-Settling Entities. ECF No. 87-2 at 11 ¶ 3. Ohana and Hunt take issue with the scope of the release of claims against Defendant. The settlements, however, are not required to resolve all of the settling Plaintiffs' claims against all possible tortfeasors. HRS § 663–15.5 does not turn on maximizing the benefit of a settlement to non-settling entities or ensuring equitable apportionment of settlements. Instead, the focus of HRS § 663–15.5 is to encourage settlements. *Durham v. Cnty. of Maui*, CIV. No. 08-00342 JMS, 2011 WL 1135082, at *5 (D. Haw. Mar. 23, 2011) (citing *Troyer,* 102 Haw. at 426, 77 P.3d at 110). Here, the settling Plaintiffs made a calculated decision, with the assistance of experienced counsel, to resolve their claims against Defendant after weighing the risks, expenses, and uncertainties of further litigation. HRS § 663–15.5 encourages such decisions.

Third, the Joint Petition's reliance on the damages awarded in the *Feindt* Final FOF/COL does not prove that the settlements lacked good faith. Although Ohana and Hunt assert that the settling Plaintiffs may have been able to recover more at trial than the *Feindt* bellwether plaintiffs, that claim is speculative and does not evidence collusion or a lack of good faith. *See Kane v. PaCap Aviation Fin., LLC*, CIV NO. 19-00574 JAO-RT, 2023 WL 9101973, at *4 (D. Haw. Dec. 19, 2023) ("Defendants have not provided any argument explaining why the *Settlement* amount tends to show that the *Settlement* may be collusive or injurious to the interest of a non-settling joint tortfeasor."), *adopted by* 2024 WL 50943 (D. Haw. Jan. 4, 2024). Even if Ohana and Hunt's assertion were correct, that the settling Plaintiffs "made the calculated choice to settle their claims against Defendant . . . for substantially less than they may have sought individually against Defendant . . . or collectively from the other defendants at trial is entirely their prerogative." *Id.* In addition, Ohana and Hunt's focus on the settlement amounts conflicts with the Hawaii Supreme Court's conclusion that "the price of a settlement alone rarely appears to be the outcome-dispositive factor regarding a settlement's bad faith." *Troyer*, 102 Haw. at 427, 77 P.3d at 111.

The Court has carefully considered the parties' and Non-Settling Entities' submissions, the terms of the settlements, the *Troyer* factors, and the totality of the circumstances. The parties, represented by experienced counsel, reached the

12

settlements through extensive, hard fought, arms-length, negotiations.  The Court observed the parties' counsel and assisted with settlement negotiations at the May 30, 2025 settlement conference.  The Court had settlement discussions with counsel before and after the conference.  The settlement amounts are tethered to the *Feindt* bellwether trial decision or based on the parties' evaluation of Plaintiffs' claims before the decision was issued.  The settlements reflect a logical, fair, and good faith resolution of this complex and contentious case in light of the risks, costs, and uncertainties of further litigation.  As Defendant points out, the Joint Petition represents the first settlements of FTCA personal injury cases relating to the 2021 Red Hill fuel releases.  ECF No. 132 at 6.  This is significant.  The Court agrees with Defendant that "[s]ettlements such as these are the only viable means of resolving this large and complex docket." *Id.*

Based on the foregoing, the Court finds that the Non-Settling Entities have not satisfied their burden of proving that the settlements lack good faith.  The Court further finds that the settlements between the 87 settling Plaintiffs and Defendant were entered into in good faith for the purposes of HRS § 663–15.5.  Accordingly, the Court recommends that the district court grant the Joint Petition.

In light of this recommendation, the Non-Settling Entities request confirmation that they:  (1) are entitled to an offset for any damages in the full amount of each settlement; and (2) be permitted to pursue any direct claims against

the United States other than for contribution or equitable indemnity. ECF No. 104 at 21–23; ECF No. 105 at 6–12. Such findings, however, are premature because the effect of the settlements is unknown at this time. *See* ECF No. 104 at 7 ("Given the Government's respective culpability, it would be fundamentally unfair if, *in the event that military housing operators are somehow held liable for the Housing Claims*, they cannot seek equitable contribution from the Government." (emphasis added)); *id.* at 20 n.10 (Ohana and Hunt identifying potential issues in the tenants' recovery of housing costs); ECF No. 105 at 5 (stating that the settlements "could" have consequences to Kapilina and GREP, such as releasing the Navy from derivative contribution to Kapilina and GREP despite the Navy's admitted negligence and control over the Navy water system). The Non-Settling Entities do not provide specific information regarding the claims affected by a good faith finding or any damages awards for which any offsets should be applied. The Court's good faith finding does not foreclose a subsequent determination regarding the effect of the settlements on the Non-Settling Entities.

Under the circumstances, the Court thus declines to make the requested findings regarding the effect of the settlements on the Non-Settling Entities. *See Wyndham*, 2010 WL 2347060, at *4 ("The Court declines to make the specific finding requested by Notkin that Plaintiff's claim for damages against the

remaining parties be reduced by the amount of consideration stipulated in the settlement.").

II.    Motion

In connection with the Joint Petition, Plaintiffs filed the Motion seeking approval of the settlements for 18 settling minor Plaintiffs. "District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011). Rule 17(c) provides, in relevant part, that a district court "must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2). "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Robidoux*, 638 F.3d at 1181 (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)) (citing *Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem")).

The Ninth Circuit stated that district courts should "focus[] on the net recovery of the minor plaintiffs under the proposed agreement." *See Robidoux*, 638 F.3d at 1181.  To that end, courts should "limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Id.* at 1181–82.  "Most importantly, the district court should evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard." *Id.* at 1182 (citing *Dacanay*, 573 F.2d at 1078).  "So long as the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties." *Id.*

Plaintiffs state that each minor's net recovery was calculated by applying a 25% contingency fee, GET of 4.712%, and costs apportioned based on each minor's percentage of total recovery, as follows:

| Gross Settlement Amount | Net Recovery Amount |
|---|---|
| $5,000 | $3,495.52 |
| $10,000 | $6,991.03 |
| $18,000 | $12,583.86 |
| $27,000 | $18,875.78 |
| $30,000 | $20,973.09 |

ECF No. 166 at 2–4.

The recovery of the settling minor plaintiffs is similar to the recovery of the minor plaintiffs in the *Feindt* bellwether trial and other cases regarding comparable injuries. *See, e.g.*, *Feindt*, ECF No. 633; *Doe v. Lincoln Military Prop. Mgmt. LP*, Case No. 3:20-cv-00224-GPC-AHG, 2020 WL 5587488, at *2, 6 (S.D. Cal. Sept. 18, 2020) (finding minor plaintiffs' net recovery of $19,793.29 and $1,277.04 for injuries including exacerbation of autism, wet coughs, eye infections, sinus infections, lethargy, and shortness of breath, sustained for exposure to black mold and other toxic chemicals fair and reasonable); *Tipton v. Camp Pendleton & Quantico Housing*, LLC, Case No.: 3:22-cv-00167-W-AHG, 2022 WL 5133481, at *3 (S.D. Cal. Oct. 4, 2022) (finding minor plaintiffs' net recoveries of $3,750 for alleged injuries, including apnea, difficulty breathing, sleep walking, rashes, behavioral issues, and psychological symptoms, sustained for exposure to black mold and other toxic chemicals to be fair and reasonable).

In light of the facts of this case, the minors' specific claims, and recovery in similar cases, the Court finds that the settlements for the 18 settling minor Plaintiffs are fair and reasonable. The Court thus recommends that the district court approve the settlements pursuant to Rule 17(c). *See Robidoux*, 638 F.3d at 1182 (noting that the Court must determine if each settlement "is fair and reasonable in light of the facts of the case, each minor's claims, and typical recovery by minor plaintiffs in similar cases" and that, "[i]f the net recovery of

17

each minor plaintiff under the proposed settlement is fair and reasonable, the district court should approve the settlement as presented").

## CONCLUSION

Based on the foregoing, the Court FINDS that the settlements between the 87 settling Plaintiffs and Defendant United States of America were made in good faith under HRS § 663–15.5.  The Court also FINDS that the settlements for the 18 settling minor Plaintiffs are fair and reasonable.  The Court thus RECOMMENDS that the district court GRANT the Joint Petition for Good Faith Settlement (ECF No. 87) and Plaintiffs' Motion for Approval of Settlement of Minors' Claims (ECF No. 86).

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, December 11, 2025.



Kenneth J. Mansfield
United States Magistrate Judge

*Williams, et al. v. United States, et al.*, Civil No. 23-00028 LEK-KJM; Findings and Recommendation to Grant:  (1) Joint Petition for Good Faith Settlement Determination; and (2) Plaintiffs' Motion for Approval of Settlement of Minors' Claims