UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| JAMIE WILLIAMS ET AL.<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA ET AL.,<br><br>Defendant. | CIV. NO. 23-00028 LEK-KJM |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION THE CLAIMS OF PLAINTIFFS ELLISTON, SIMIC, STEPHENS, TORRES, WILSON, WOODSON, AND DINGLE**

Before this Court is Defendant United States of America's ("United States") Motion to Dismiss for Lack of Subject-Matter Jurisdiction the Claims of Plaintiffs Elliston, Simic, Stephens, Torres, Wilson, Woodson, and Dingle, filed on May 29, 2026 ("Motion"). [Dkt. no. 225.] On June 15, 2026, Plaintiffs filed their memorandum in opposition to the Motion ("Memorandum in Opposition"). [Dkt. no. 232.] The United States filed its reply on June 22, 2026. [Dkt. no. 233.]

This matter came on for hearing on July 15, 2026. At the hearing, this Court orally granted the Motion, but the instant Order supersedes the oral ruling. The United States' Motion is granted for the reasons set forth below.

## BACKGROUND

The operative pleading in this action is the Second Amended Complaint, [filed 12/18/23 (dkt. no. 53)]. This Court discusses only the factual allegations relevant to the instant Motion.

This case arises out of the May 6 and November 20, 2021 fuel leaks from the United States Navy's ("the Navy") Red Hill Bulk Fuel Storage Facility on Joint Base Pearl Harbor-Hickam ("Red Hill" and "JBPHH"). [Second Amended Complaint at ¶¶ 100-09.] Plaintiffs allege that the United States, through the Navy and other agencies, owned and operated Red Hill and staffed it with its agents, servants, and employees. [Id. at ¶¶ 99, 101.] Plaintiffs allege that there have been at least seventy-six reported incidents of fuel releases at Red Hill, involving nearly 200,000 gallons of fuel. [Id. at ¶ 102.]

Plaintiffs allege that the November 20, 2021 fuel release at Red Hill ("November 2021 Release") caused the Red Hill Shaft, a drinking-water source for the United States military, to be contaminated with fuel. Plaintiffs further allege that, approximately one week after the November 2021 Release, fuel flowed from the Red Hill Shaft to the homes of residents in military housing. As a result of that contamination, Plaintiffs allege that they drank, bathed in, and used the contaminated water. [Id. at ¶¶ 105-08.]

Plaintiffs allege that the United States negligently failed to prevent the contamination of their water in their homes and negligently failed to prevent the contamination of their water supply with fuel, which resulted in Plaintiffs' ingestion and exposure to contaminated water. This ingestion and exposure, Plaintiffs submit, caused them physical harm and mental anguish. See id. at ¶¶ 110-11.

Plaintiffs assert claims for negligence ("Count I"), public/private nuisance ("Count II"), and negligent infliction of emotional distress ("Count III"). [Id. at pgs. 16-19.]

The United States seeks dismissal, under Federal Rule of Civil Procedure 12(b)(1), of all claims asserted by Plaintiffs Jevaughn Elliston, Brian Simic, Jesse Stephens, Adam Torres, Daniel Wilson, Cade Woodson, and Wayne Dingle ("Dingle" and collectively the "Service Member Plaintiffs"). [Motion, Mem. in Supp. at 1, 4.] The United States argues that the Service Member Plaintiffs' claims arose out of activity incident to their military service and are thus barred under the doctrine promulgated by the United States Supreme Court in Feres v. United States, 340 U.S. 135 (1950). See Motion, Mem. in Supp. at 5-7. The United States argues separately that Dingle's personal injury claims are barred by the Federal Tort Claims Act's ("FTCA") foreign country exception because Dingle was stationed in South Korea when his asserted personal injuries allegedly

arose, and that, to the extent Dingle asserts property-damage claims, those claims are barred by the Feres doctrine. See id. at 13-15.

The United States relies on this Court's recent order dismissing the claims of service members pursuant to the Feres doctrine in Whaley et al. v. United States of America, CV 23-00457 LEK-KJM ("Whaley"). See, e.g., Motion, Mem. in Supp. at 1 (citing Whaley, Order Granting Defendant's Motion to Dismiss *Whaley* First Amended Complaint for Lack of Subject-Matter Jurisdiction, filed 5/5/26 (dkt. no. 333) ("Whaley Order")).[1] The United States urges this Court to reach the same conclusion as it did in the Whaley Order because the Service Member Plaintiffs were active-duty service members who allegedly were injured by being exposed to contaminated tap water while residing in military housing. See id. at 5-7.

Plaintiffs disagree and argue that the Feres doctrine does not bar the Service Member Plaintiffs' claims because their

[1] The Whaley Order is also available at 2026 WL 1236183. The Whaley Order was also filed as docket number 739 in Feindt et al. v. United States of America, CV 22-00397 LEK-KJM, and docket number 319 in Hughes et al. v. United States of America, CV 24-00059 LEK-KJM, cases that were previously consolidated with Whaley. See Whaley, Minute Order - EO: Order Amending the Order Granting United States' Motion to Consolidate, filed 6/3/26 (dkt. no. 348). An appeal of the Whaley Order and the Whaley, Judgment in a Civil Case, [filed 5/20/26 (dkt. no. 338),] is pending before the Ninth Circuit Court of Appeals. See Whaley, Plaintiffs' Notice of Appeal, filed 7/17/26 (dkt. no. 349).

alleged injuries occurred primarily in their homes, during off-duty hours, and while they were engaged in personal activities rather than participating in military operations or following orders. [Mem. in Opp. at 2-3.] Plaintiffs characterize the Feres doctrine as a narrow exception to the FTCA's waiver of liability for service members who sustain injuries incident to service. [Id. at 3.] Plaintiffs contend that this Court should apply the four factors from Johnson v. United States, 704 F.2d 1431 (9th Cir. 1983), which consider: 1) the situs of the tortious act; 2) the plaintiff's duty status at the time of the tortious act; 3) the military benefits the plaintiff had; and 4) the type of activities the plaintiff was engaged in at the time of the tortious act. [Id. (citing Johnson, 704 F.2d at 1436-39).] Plaintiffs argue that none of the Johnson factors weigh in favor of applying the Feres doctrine to bar the Service Member Plaintiffs' claims. [Id. at 4-7.]

As to Dingle, Plaintiffs argue that his claims are not barred by the FTCA's foreign country exception or the Feres doctrine. [Id. at 7-8.] Plaintiffs, however, do not respond to the United States' assertions that Dingle's alleged personal injuries first arose while he was stationed in South Korea, nor the United States' argument that his property-damage claims are barred by the Feres doctrine. See id.

**STANDARDS**

## I. Rule 12(b)(1) Motion to Dismiss

> Federal Rule of Civil Procedure 12(b)(1) authorizes a defendant to move for dismissal of an action for "lack of subject-matter jurisdiction[.]" "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." Robinson v. United States, 586 F.3d 683, 685 (9th Cir. 2009) (citation and quotation marks omitted). . . .
>
> . . . .
>
> "A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." Leite v. Crane, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation and some internal quotation marks omitted). "A 'factual' attack . . . contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." Id. (citations omitted).

Pub. Int. Legal Found., Inc. v. Nago, CIV. NO. 23-00389 LEK-WRP, 2024 WL 3233994, at *2-3 (D. Hawai`i June 28, 2024) (some alterations in Pub. Int.). Here, the United States attached a declaration and exhibits to the Motion, thereby "convert[ing] the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court[.]" See Safe Air for Everyone, 373 F.3d at 1039 (quotation marks and citation omitted). Therefore, the Motion is considered

as a Rule 12(b)(1) motion and need not be treated as a summary judgment motion.

**II. Sovereign Immunity**

"'Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit'" and deprives the court of jurisdiction. See Harger v. Dep't of Lab., 569 F.3d 898, 903 (9th Cir. 2009) (quoting Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 260, 119 S. Ct. 687, 142 L. Ed. 2d 718 (1999)). As a result, the United States may challenge a federal court's subject matter jurisdiction under Rule 12(b)(1) on the basis of sovereign immunity. See Pistor v. Garcia, 791 F.3d 1104, 1111 (9th Cir. 2015) (collecting cases) ("Rule 12(b)(1) is . . . a proper vehicle for invoking sovereign immunity from suit." (citations omitted)).

> "Jurisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver." United States v. White Mountain Apache Tribe, 537 U.S. 465, 472, 123 S. Ct. 1126, 155 L. Ed. 2d 40 (2003) (citations omitted). "[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Soriano v. United States, 352 U.S. 270, 276, 77 S. Ct. 269, 1 L. Ed. 2d 306 (1957).

Mollison v. United States, 568 F.3d 1073, 1075 (9th Cir. 2009) (alteration in Mollison). The Feres doctrine is a "jurisdictional

bar" to tort claims against the United States. See Daniel v. United States, 889 F.3d 978, 980 (9th Cir. 2018).

## DISCUSSION

### I. The *Feres* Doctrine

Plaintiffs do not cite, discuss, or refer to the Whaley Order. See generally Mem. in Opp. This Court concludes that each Johnson factor weighs in favor of applying the Feres doctrine to bar the claims of the Service Member Plaintiffs for largely the same reasons as discussed in the Whaley Order.[2]

> These factors "cannot be blindly applied to determine whether an injury occurred in the course of activity incident to service. The only way to decide whether an injury is incident to service is to consider the facts of each individual case." Jackson v. Tate, 648 F.3d 729, 734 (9th Cir. 2011) (citation and internal quotation marks omitted). Furthermore, the Ninth Circuit has "reached the unhappy conclusion that the cases applying the Feres doctrine are irreconcilable, and thus, comparison of fact patterns to outcomes in cases that have applied the Feres doctrine is the most appropriate way to resolve Feres doctrine cases." Costo [v. United States], 248 F.3d [863,] 867 [(9th Cir. 2001)] (citation and internal quotation marks omitted).

[2] This Court need not decide whether it is free to rely exclusively on Feres precedent or whether it is required to apply the Johnson factors, see Motion, Mem. in Supp. at 6 (arguing that examination of the Johnson factors is unnecessary), because it would reach the same result regardless of the analytical framework. See Whaley Order, 2026 WL 1236183, at *3 n.4.

Whaley Order, 2026 WL 1236183, at *3 (some alterations in Whaley). In Whaley, this Court compared the Whaley action "to actions where the United States and its military departments were accused of negligently contaminating drinking water resulting in service member injuries because such actions are the most factually analogous to the dispute before the Court." Id. This Court determined that actions where "[f]ederal courts in the Ninth Circuit and other circuits have applied the Feres doctrine to cases related to the Camp Lejeune water contamination crisis" were analogous to the Whaley action. See id. (citing Swanson v. United States, Case No. 3:18-cv-02148-JR, 2019 WL 7633157, at *1-2 (D. Or. Nov. 6, 2019);[3] Clendening v. United States, 19 F.4th 421, 425-32 (4th Cir. 2021); Foster v. Dep't of the Navy, NO. 5:19-CV-429-FL, 2020 WL 1542092 (E.D.N.C. Mar. 31, 2020); O'Connell v. Dep't of the Navy, Civil Action No. 10-10746-NMG, 2010 WL 5572928 (D. Mass. Dec. 21, 2010); Perez v. United States, CASE NO. 09-22201-CIV-JORDAN, 2010 WL 11505507 (S.D. Fla. Mar. 1, 2010)). Because this action, like the Whaley action, arises out of the May 6 and November 20, 2021 fuel leaks from Red Hill, compare *supra* Background, with Whaley Order, 2026 WL 1236183, at *1, this Court looks to the Camp

[3] The magistrate judge's report and recommendation in Swanson, 2019 WL 7633157, was adopted by the district judge. 2020 WL 423384 (Jan. 24, 2020). The Ninth Circuit affirmed. 845 F. App'x 690 (9th Cir. 2021).

Lejeune water contamination crisis in discussing the Johnson factors.

**A. Factor One - Situs of Tort**

The first factor examines where the tortious act occurred. See Johnson, 704 F.2d at 1436. There is no dispute that the Navy's negligent act took place at Red Hill. While the Service Member Plaintiffs suffered their injuries in their respective homes, see, e.g., Second Amended Complaint at ¶¶ 100-23, "[t]he appropriate consideration is the situs of the negligence." See Costo, 248 F.3d at 868 (citation and internal quotation marks omitted). Plaintiffs cite no authority to support their assertion that the focus of the first factor should be where they suffered their injuries. See generally Mem. in Opp. Accordingly, the first factor weighs in favor of applying the Feres doctrine to bar the Service Member Plaintiffs' claims against the United States.

**B. Factor Two - Duty Status**

Pursuant to the second factor, this Court must scrutinize the Service Member Plaintiffs' duty status when the tortious act occurred. See Johnson, 704 F.2d at 1437-38. There is no dispute that the Service Member Plaintiffs were active-duty service members at the time of the November 2021 fuel release.

Plaintiffs attempt to distinguish the second factor by pointing to cases where service members performed activities that could have been performed by civilians in similar positions. See Mem. in Opp. at 4-5 (citing Dreier v. United States, 106 F.3d 844, 853 (9th Cir. 1996); Schoenfeld v. Quamme, 492 F.3d 1016, 1023-25 (9th Cir. 2007)). Plaintiffs remark that the decedent in Dreier was an active-duty service member but was found to have been performing "activities on the base [that] were 'indistinguishable from that of a civilian participating in the same leisure activities.'" [Id. at 4 (quoting Dreier, 106 F.3d at 853).] Plaintiffs state that the activity at issue in Dreier was hiking and also state that "civilians had access to the same hiking area." [Id. at 4-5 (citing Dreier, 106 F.3d at 853).]

> The Ninth Circuit in Johnson, when discussing the second factor, stated that, "duty status is relevant only insofar as it bears on the relationship between the activity leading to the injury and [the service member's] military service." 704 F.2d at 1438. Accordingly, "[t]he important question is whether the service member on active duty status was engaging in an activity that is related in some relevant way to his military duties." Id. In the absence of such a relationship, active-duty status would not be relevant in assessing the second Johnson factor. See id.

Whaley Order, 2026 WL 1236183, at *5 (alterations in Whaley).

Plaintiffs ask this Court, as the plaintiffs did in Whaley, to confine its attention to the personal activities that

the Service Member Plaintiffs engaged in during and following the November 2021 fuel release. See Mem. in Opp. at 5; Whaley Order, 2026 WL 1236183, at *5. The activity, however, that led to the Service Member Plaintiffs' injuries was their quartering in military housing. This activity parallels the activity at issue in Feres. See Feres, 340 U.S. at 136-37, 146 (barring a negligence claim alleging that the United States knew or should have known of unsafe living conditions in the barracks of a service member who perished from a fire in the barracks); see also Perez, 2010 WL 11505507, at *4 ("The negligence alleged in Feres — the government's failure to maintain safe premises for soldiers living on a military base — is very similar to, and . . . legally indistinguishable from, the negligence alleged here — the government's failure to maintain a clean drinking water supply at a military base and failure to warn soldiers and their dependents about dangerous chemicals in the water.").

Consequently, Plaintiffs' reliance on cases such as Dreier is unavailing. In Dreier, the decedent's "drinking beer and swimming during his leisure time in an area to which the public has access," *i.e.*, the activity that led directly to his death, did not bear any relevant relationship to his military duty as a soldier in the United States Army. See 106 F.3d at 845, 853. In contrast, the Service Member Plaintiffs were active-duty service members occupying military housing provided

to them as a direct consequence of their active-duty status. The activities leading to their injuries, *i.e.*, utilizing military housing and water utilities, are inextricably linked to their active-duty military service. See Whaley Order, 2026 WL 1236183, at *5. Accordingly, the second factor weighs in favor of applying the Feres bar.

**C. Factor Three - Benefits to Service Members**

The third Johnson factor requires the examination of the benefits accruing to the Service Member Plaintiffs because of their military status. See Johnson, 704 F.2d at 1438-39. When considering the third Johnson factor, two distinct benefits can be examined: first, an entitlement to compensation on account of the resulting injury, and second, "the benefit of being permitted to participate in the activity that led to the injury." See Schoenfeld, 492 F.3d at 1024 (citation omitted).

The Service Member Plaintiffs do not dispute that the first type of benefit weighs in favor of applying the Feres doctrine to bar their claims. See Mem. in Opp. at 5-6. Accordingly, the Service Member Plaintiffs' entitlement to compensation as a result of their injury weighs in favor of applying the Feres bar.

Plaintiffs argue that "[p]ersonal use of tap water, for cooking, cleaning and bathing is not a benefit incident to the service members' service." [Mem. in Opp. at 5.] They further

contend that "[t]here is negligible benefit to the exposures to contaminated water in [the Service Member Plaintiffs'] homes which accrues as a by-product of the service members status as a member of the military." [Id. at 6.]

Plaintiffs miss the mark. As this Court discussed in Whaley, the relevant inquiry is whether the housing and utilities provided to the Service Member Plaintiffs were provided to them as benefits of their military service. See Whaley Order, 2026 WL 1236183, at *6. Like the plaintiffs in Whaley, the Service Member Plaintiffs' housing was a benefit derived from their positions as service members. See id. at *7; Second Amended Complaint at ¶¶ 107, 110 (alleging that fuel flowed from Red Hil into military housing where Plaintiffs drank and bathed in contaminated water). Plaintiffs present no case law supporting their assertion that the inquiry should instead be whether the benefit was "negligible" or "minimal." See Mem. in Opp. at 5-6. Accordingly, the third Johnson factor also weighs in favor of the application of the Feres doctrine to bar the Service Member Plaintiffs' claims.

## D. Factor Four - Nature of Activities

> Pursuant to the fourth Johnson factor, the Court must analyze the nature of the [Service Member] Plaintiffs' activities at the time the negligent act occurred. See Johnson, 704 F.2d at 1439-41. The Ninth Circuit has previously stressed that the fourth factor [] "is the most important in determining whether a plaintiff's

> suit is Feres barred." Schoenfeld, 492 F.3d at 1025 (citation omitted). "[T]he key inquiry is 'whether or not the service member's activities at the time of injury are of the sort that could harm the disciplinary system if litigated in a civil action.'" Id. (quoting Johnson, 704 F.2d at 1439). Considerations that are relevant to this key inquiry include whether the nature of the activity at issue "involve the sort of close military judgment calls that the Feres doctrine was designed to insulate from judicial review" or implicate "decision[s] requiring military expertise or judgment." See Johnson, 704 F.2d at 1440 (citation omitted).

Whaley Order, 2026 WL 1236183, at *7 (some alterations in Whaley).

Plaintiffs contend that the Service Member Plaintiffs' activities at the time that they were injured were entirely "private/personal." See Mem. in Opp. at 6. Plaintiffs' argument, however, does not address this Court's conclusion in Whaley that "residing in military housing" is the activity "which led to the Whaley Plaintiffs' alleged injuries." See Whaley Order, 2026 WL 1236183, at *7 (citing Perez, 2010 WL 11505507, at *4 ("although it is not exactly clear what precise activity or activities [the plaintiff] was engaged in every single time he drank or used the contaminated water at [Camp Lejeune], it is undeniable that he drank and used the water while performing at least some military activities")). So too here. "When evaluating similar claims involving contaminated water provided by the military, federal courts," including this Court, "have consistently rejected the

argument that engaging in routine, personal activities at home precludes the application of the Feres doctrine." Whaley Order, 2026 WL 1236183, at *7 (citations omitted). This Court similarly concludes that the Service Member Plaintiffs' "overarching activity of residing in military-provided housing and consuming military-supplied water is fundamentally incidental to their military service." See id. at *9.[4]

**E. Summary**

Because all four Johnson, 704 F.2d 1431, factors weigh in favor of the application of the Feres doctrine to bar the Service Member Plaintiffs' claims, this Court concludes, with regret, that it is compelled to grant the Motion. This Court again recognizes that dismissal of claims by service members in this matter based on the Feres doctrine is an overly harsh and unjust outcome. See Whaley Order, 2026 WL 1236183, at *9 (noting that justices of the Supreme Court and the Ninth Circuit have called into doubt the validity of the Feres doctrine). This

[4] Plaintiffs also point to activities such as bathing, cooking, brushing teeth, washing pets, and drinking water, and argue that such activities were not performed by the Service Member Plaintiffs pursuant to a military mission or orders. [Mem. in Opp. at 6-7.] This Court, however, has already rejected the argument that "the Feres doctrine is inapplicable unless a service member is acting under orders or on a specific military mission." Whaley Order, 2026 WL 1236183, at *8 (citations omitted).

Court, however, remains bound and compelled to follow Feres and its Ninth Circuit progeny.

**II. Dingle's Claims**

Plaintiffs do not address the United States' argument that the FTCA's foreign country exception bars Dingle's personal injury claims. See generally Mem. in Opp. Nor do Plaintiffs attempt to rebut the evidence submitted by the United States showing that Dingle suffered his alleged emotional distress and other impacts on his mental health while in South Korea. See, e.g., Motion, Declaration of Eric A. Rey in Support of the United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction the Claims of Plaintiffs Elliston, Simic, Stephens, Torres, Wilson, Woodson, and Dingle, Exh. C (excerpt of Plaintiff Wayne Dingle's Response to Defendant United States' Third Set of Interrogatories to Remaining *Williams* Plaintiffs, Dated July 16, 2025). This Court concludes that Dingle's personal injury claims are barred by the FTCA. See S.H. by Holt v. United States, 853 F.3d 1056, 1058 (9th Cir. 2017) (concluding that the foreign country exception bars the plaintiff's claims because the injury was suffered outside of the United States); Domantay v. United States Dep't of Veterans Affs., Case No. 18-cv-03726-SK, 2018 WL 10501631, at *2 (N.D. Cal. Dec. 10, 2018) (concluding that the foreign country exception bars the plaintiff's claim because, "even if the

allegedly wrongful act occurred in the United States," the injury occurred outside of the United States); see also Terry v. Tabar, CIVIL NO. 24-00309 JAO-KJM, 2025 WL 1319177, at *7 (D. Hawai`i Apr. 25, 2025) (concluding that, because the plaintiff did not address the defendant's argument that the district court lacked jurisdiction over an FTCA action, the plaintiff "concede[d] that dismissal is warranted on this basis." (citation omitted)).

This Court also concludes that the Feres doctrine bars Dingle's property-damage claims for the same reasons discussed *supra*.

## CONCLUSION

For the foregoing reasons, the United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction the Claims of Plaintiffs Elliston, Simic, Stephens, Torres, Wilson, Woodson, and Dingle, filed May 29, 2026, is GRANTED.

There being no remaining claims, the Clerk's Office is DIRECTED to enter judgment in favor of the United States and to close this case, pursuant to the instant Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 27, 2026.

/s/ Leslie E. Kobayashi

Leslie E. Kobayashi
Senior U.S. District Judge

**JAMIE WILLIAMS ET AL. VS. UNITED STATES OF AMERICA ET AL.; CV 23-00028 LEK-KJM; ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION THE CLAIMS OF PLAINTIFFS ELLISTON, SIMIC, STEPHENS, TORRES, WILSON, WOODSON, AND DINGLE**